UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NATIONAL ASSOCIATION OF  HOME BUILDERS *et al.*, | : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 09-0548 (RMU) |
| v. | : : | Re Document No.: | 5 |
| UNITED STATES ENVIRONMENTAL  PROTECTION AGENCY *et al.*, | : : : | | |
| Defendants. | : : | | |

## MEMORANDUM OPINION

### Denying the Defendants' Motion to Transfer Venue

### I.  INTRODUCTION

This matter comes before the court on the motion to transfer venue filed by the defendants, the Environmental Protection Agency ("EPA") and the Army Corps of Engineers ("Corps"). The plaintiffs, trade associations representing businesses in the housing and construction fields, seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, of the defendants' designation of two reaches of the Santa Cruz River in Arizona as "traditional navigable waters" under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq.* The defendants move to transfer venue to the District of Arizona. After weighing the considerations of convenience and the interests of justice, the court denies the defendants' motion.

### II.  FACTUAL & PROCEDURAL BACKGROUND

On March 23, 2009, the plaintiffs commenced this action, challenging the decision of the

defendants[1] to classify two reaches of the Santa Cruz River[2] as "traditional navigable waters," a term of art under the CWA. Compl. ¶ 2. These reaches are located in Arizona. *Id.* ¶ 1.

The EPA's decision to designate these reaches as traditional navigable waters was communicated in a letter written by the EPA's Assistant Administrator for Water, Benjamin Grumbles, on December 3, 2008. *Id.* ¶ 3, Ex. 1. The letter was signed at the EPA's headquarters in the District of Columbia. Defs.' Mot. at 9. In this letter, Grumbles affirmed an earlier determination made by the Corps' Los Angeles District that the reaches qualified as traditional navigable waters. Compl. ¶ 4.

In their first claim for relief, the plaintiffs allege that the Corps and the EPA violated the APA's procedural requirements in making this determination. *Id.* ¶¶ 58-66. More specifically, the plaintiffs claim that the agencies failed to issue a notice of proposed rulemaking and give interested parties an opportunity to comment on the proposed regulations, in violation of 5 U.S.C. §§ 553(b)-(c) and 706(2)(D). *Id.* The plaintiffs' second claim concerns the substance of the determinations. *Id.* ¶¶ 67-79. The plaintiffs contend that the determinations by the agencies in question were arbitrary and capricious, were unsupported by sufficient evidence and exceeded the agencies' statutory authority. *Id.*

On April 10, 2009, the defendants filed a motion to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). *See generally* Defs.' Mot. The court now turns to the

---

[1] The EPA is tasked with administering the CWA. *See* 33 U.S.C. § 1251(d). Other provisions of the CWA give the Corps authority to enforce provisions of the CWA, such as issuing permits for the "discharge of dredged or fill material into the navigable waters at specified disposal sites." *Id.* § 1344(a).

[2] The Santa Cruz River originates in Arizona, flows south into Mexico and then flows north again into Arizona, where it merges with the Gila River. *See* Defs.' Mot. at 4.

applicable legal standard and the parties' arguments.

### III.  ANALYSIS

#### A.  Legal Standard for Venue under 28 U.S.C. § 1391(e) and Transfer Pursuant to 28 U.S.C. § 1404(a)

When federal jurisdiction is not premised solely on diversity and a defendant is an officer, employee, or agency of the United States, venue is proper in:

> any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

If, upon objection of a party, the court concludes that venue is improper, it may transfer the case pursuant to 28 U.S.C. § 1406.  In an action where venue is proper, 28 U.S.C. § 1404(a) nonetheless authorizes a court to transfer a civil action to any other district where it could have been brought "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Under this statute, the moving party bears the burden of establishing that transfer is proper.  *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

Accordingly, the defendants must make two showings to justify transfer.  First, the defendants must establish that the plaintiffs originally could have brought the action in the proposed transferee district.  *Van Dusen*, 376 U.S. at 622.  Second, the defendants must

demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Trout Unlimited*, 944 F. Supp. at 16.  As to the second showing, the statute calls on the court to weigh a number of case-specific private- and public-interest factors. *Stewart Org.*, 487 U.S. at 29.  The private-interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited*, 944 F. Supp. at 16 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989); 15 FED. PRAC. & PROC. § 3848).  The public-interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id*.

### B. The Court Denies the Defendants' Motion for Transfer

As noted above, to justify a transfer of venue, the defendants must, as a threshold matter, demonstrate that the plaintiffs could have originally brought the case in the proposed transferee district. *Van Dusen*, 376 U.S. at 622.  The plaintiffs concede that venue would have been appropriate in the District of Arizona had the case originally been brought there.[3]  *See* Pls.' Opp'n at 12.  Next, the defendants must show that the private- and public-interest factors weigh in favor of transfer. *Van Dusen*, 376 U.S. at 622; *Trout Unlimited*, 944 F. Supp. at 16.  Four

---

3   Venue is appropriate where "a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e).  As noted in Part II *supra*, the reaches of the Santa Cruz River at issue are located exclusively in Arizona.  *See* Compl. ¶ 1.

factors are particularly relevant to this case and are contested by the parties.[4]

First, the parties dispute whether there is a strong local interest in deciding this controversy in Arizona. *See* Defs.' Mot. at 8-9; Pls.' Opp'n at 11-14. Second, the parties disagree over whether the relative congestion of the calendars of the potential transferee and transferor courts supports transfer. *See* Defs.' Mot. at 10; Pls.' Opp'n at 11. Third, the parties dispute where the claims arose. *See* Defs.' Mot. at 11; Pls.' Opp'n at 8-9. Fourth, the parties disagree over how much deference should be given to the parties' chosen forums. *See* Defs.' Mot. at 11-12; Pls.' Opp'n at 5-8. As the moving party, the defendants carry the burden of demonstrating that these factors weigh in favor of transfer. *Peter B. v. Cent. Intelligence Agency*, 620 F. Supp. 2d 58, 66 (D.D.C. 2009). The court turns now to the four contested factors.

### 1. Local Interest in Deciding Local Controversies at Home

The defendants argue that there is a strong local interest in having this case decided in the District of Arizona because the relevant portions of the Santa Cruz River are all located in Arizona. Defs.' Mot. at 9. The plaintiffs acknowledge as much, noting that the designation at issue will directly affect the "use and development of real property" located in Arizona. Compl. ¶ 27. The plaintiffs argue, however, that the case should remain in the District of Columbia because the questions of federal law and alleged procedural violations at issue in this case have

---

[4] The parties concede that most of the private- and public-interest factors are neutral in this case; that is, they do not weigh strongly in favor of either granting or denying the motion to transfer. For example, the defendants do not contend that venue in the District of Arizona would be more convenient for the parties than it would be in this district. Defs.' Mot. at 12; Pls.' Opp'n at 9. Likewise, the parties concede that because cases reviewed under the APA are generally limited to review of the administrative record, the convenience of witnesses and access to sources of proof do not carry significant weight. Defs.' Mot. at 12; Pls.' Opp'n at 9-10. In addition, the parties agree that both this court and the District of Arizona are familiar with the federal laws at issue in this case. Defs.' Mot. at 10; Pls.' Opp'n at 11.

broad implications for the application of the CWA nationwide.  Pls.' Opp'n at 13.  Further, the plaintiffs contend that the involvement of officials outside of Arizona indicates that the determination concerning the Santa Cruz River carries national significance.  *Id.* at 14.

This Circuit has acknowledged that "[t]here is a local interest in having localized controversies decided at home."  *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).  When a case affects the rights and interests of citizens of a particular state or locality, conducting a trial in that state or locality is one way for the courts to show respect to those citizens' interests.  *Adams*, 711 F.2d at 167 n.34.  In addition, the "geographic dispersion of cases is one way to avoid excessive concentration of judicial power in a single tribunal."  *Id.* at 167; *see also Stearns v. McGuire*, 512 F.2d 918, 928 (D.C. Cir. 1974) (stating that there is no "blanket rule that 'national policy' cases should be brought" in the District of Columbia).

In cases in which the land in dispute is located entirely within the proposed transferee district, there is some degree of local interest in deciding the case in that district.  *See, e.g.*, *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 26 (D.D.C. 2002); *Trout Unlimited*, 944 F. Supp. at 19.  In *Shawnee Tribe*, the property at issue was located near a major metropolitan center, and the allocation of the ownership of that property necessarily "implicate[d] considerable local economic, political, and environmental interests."  298 F. Supp. at 26.  Similarly, in *Trout Unlimited*, the court noted that the property at issue involved waterways located within the transferee district, and that the regulation of those waterways affected local water rights, environmental regulations and local wildlife.  944 F. Supp. at 19-20.  Additionally, citizens residing within the proposed transferee district had submitted many comments to the court

regarding the case, indicating a high level of local public interest in the case. *Id.* at 20.

Yet the mere presence of a local interest, in the form of property located within the proposed transferee district, is not dispositive in the transfer analysis. *See Otay Mesa*, 584 F. Supp. 2d at 126; *Akiachak*, 502 F. Supp. 2d at 68. By way of illustration, *Otay Mesa* involved the designation of 4000 acres in the San Diego region as a "critical habitat" for an endangered species. 584 F. Supp. 2d at 123-24. While the location of the property weighed in favor of transfer, the court emphasized that the protection of endangered species is a national concern, not merely a local one, and thus the connection of the controversy was only "somewhat stronger" to the Southern District of California than it was to the District of Columbia. *Id.* at 126. Similarly, in *Akiachak*, the court noted that while the outcome of the case would have an immediate impact on citizens of the proposed transferee district, this factor was outweighed by the other public- and private-interest factors. 502 F. Supp. 2d at 68; *see also Fund for Animals v. Norton*, 352 F. Supp. 2d 1, 2 (D.D.C. 2005) (identifying a strong local interest in the dispute, but holding that this factor was not dispositive).

Likewise, in the instant case, the defendants are correct in noting that the location of the disputed property in the proposed transferee district implicates some local interest. No aspect of this case, however, compels the court to ascribe significant weight to this factor. There is no indication, for example, that the designation of the relevant reaches of the Santa Cruz River as traditional navigable waters will have a major impact on local economic, political and environmental interests. *Cf. Shawnee Tribe*, 298 F. Supp. 2d at 26. Nor has the court received comments or any other type of communication from the public indicating that there is a high degree of local public interest in the regulation at issue. *Cf. Trout Unlimited*, 944 F. Supp. at 19-

20.

On the other hand, the high degree of involvement of officials outside of Arizona indicates that the validity of the determination carries significance beyond Arizona. *Cf. Otay Mesa*, 584 F. Supp. 2d at 126. Indeed, the defendants do not argue that any officials located in Arizona made any of the decisions being challenged in this case. *See* Defs.' Mot. at 8-9. As a consequence, the court concludes that the local interest in deciding this case in the District of Arizona weighs only somewhat in favor of transfer.

### 2. Relative Congestion of the Proposed Transferee and Transferor Courts

The second disputed factor is whether the relative congestion of this court and the proposed transferee court supports transfer. *Trout Unlimited*, 944 F. Supp. at 16. The defendants suggest that this court's calendar is overloaded with petitions for writs of habeas corpus filed by individuals detained in Guantanamo Bay, Cuba. Defs.' Mot. at 10. The plaintiffs, citing the Federal Court Management Statistics compiled in 2008, respond by noting that the District of Arizona has even more pending cases per judgeship than does this district. Pls.' Opp'n at 11. Given the lack of evidence that this court's docket is substantially more congested than that of the District of Arizona, the court holds that this factor does not support transfer.

### 3. Location Where the Claims Arose

The third factor disputed by the parties is whether the claims arose in this district or in the District of Arizona. The defendants focus on the geographic location of the Santa Cruz River, asserting that any injuries the plaintiffs may suffer as a result of the EPA's determination would be confined to Arizona. Defs.' Mot. at 11. Arguing that claims "arise" in the location in which the injury is suffered, the defendants maintain that the claims in this case arose in Arizona. *Id.*

The plaintiffs respond that the claims actually arose where the EPA and Corps officials made the decisions relevant to this case. Pls.' Opp'n at 8.

In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose. *See, e.g.*, *Shawnee Tribe*, 298 F. Supp. 2d at 25; *Akiachak*, 502 F. Supp. 2d at 68. In *Shawnee Tribe*, the court noted that although a few officials located in the District of Columbia had been involved, the final determination at issue was not made in the District of Columbia. 298 F. Supp. 2d at 25. Therefore, the court concluded that this factor weighed in favor of transfer from this district. *Id.* In contrast, the court in *Akiachak* held that because the decisionmaking process had occurred primarily within the District of Columbia and the decisionmakers were located in the District of Columbia, this factor weighed against transfer. 502 F. Supp. 2d at 67-68.

In this case, neither party contends that any part of the decisionmaking process occurred in Arizona. *See* Defs.' Mot. at 8-9; Pls.' Opp'n at 8. The Corps' decision to designate the reaches of the Santa Cruz River as traditional navigable waters was made in California, *see* Compl. ¶ 4, and the EPA's decision affirming the Corps' determination was made in the District of Columbia, *see* Defs.' Mot. at 9. Absent any allegation that the decisions were made by officials located in Arizona, this case is distinguishable from cases in which the court has determined that transfer was appropriate notwithstanding the fact that the relevant decisions were made in the District of Columbia. *See, e.g.*, *Valley Cmty. Preservation Comm'n v. Mineta*, 231 F. Supp. 2d 23, 47 (D.D.C. 2002). Therefore, the court holds that the claims arose primarily in the District of Columbia and California and, as a consequence, concludes that this factor weighs against transfer to the District of Arizona.

### 4. Parties' Chosen Forums

The defendants contend that the plaintiffs' choice of forum is entitled to minimal weight because the controversy has only an "attenuated" connection to the District of Columbia. Defs.' Mot. at 12. The defendants further argue that their choice of forum should be entitled to deference. *See* Defs.' Mot. at 11-12. The plaintiffs, on the other hand, maintain that their choice of forum carries significant weight because the ultimate decisionmakers were located in the District of Columbia, establishing a sufficient nexus with this forum. Pls.' Opp'n at 6-7. The plaintiffs argue that the deference granted to their choice of forum should outweigh any deference granted to the defendants' choice of forum. Pls.' Opp'n at 5-8.

A plaintiff's choice of forum is ordinarily entitled to deference. *Trout Unlimited*, 944 F. Supp. at 17 (citing *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987)). The court is mindful, however, that it "must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 985 F.2d 253, 256 (D.C. Cir. 1993). When there is only an "attenuated" connection between the controversy and the plaintiff's chosen forum and the that forum is not the plaintiff's home forum,[5] the deference afforded to the plaintiff's choice is diminished. *Otay Mesa*, 584 F. Supp. 2d at 125; *Trout Unlimited*, 944 F. Supp. at 17. How heavily a plaintiff's choice weighs against transfer, therefore, depends on the existence of a connection between the underlying case and this district. If such a connection exists, the plaintiff's choice of forum is entitled to substantial deference, *see Peter B.*, 620 F. Supp. 2d at

---

[5] The lead plaintiff in this case, the National Association of Home Builders, is located in the District of Columbia, while the two remaining plaintiffs are located in Arizona. *See* Compl. at 1.

66; *Akiachak*, 502 F. Supp. 2d at 68; *TOMAC v. Norton*, 193 F. Supp. 2d 182, 196 (D.D.C. 2002), which outweighs the deference conferred on the defendant's choice of forum, *see Milanes v. Holder*, 2009 WL 3367497, at *3 (D.D.C. Oct. 21, 2009) (citing *Pain v. United Techs Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980); *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007)).

As discussed in Part II.B.3 *supra*, the plaintiffs' claims in this case arose in the District of Columbia. Consequently, the plaintiffs are entitled to substantial deference in their choice of forum, and this factor weighs against permitting transfer to the District of Arizona. *See Akiachak*, 502 F. Supp. 2d at 68 (holding that the case "present[ed] a sufficiently substantial nexus to this district to warrant deference to [the plaintiff's] choice of forum"); *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (explaining that because the controversy bore a substantial connection to the plaintiffs' chosen forum, the plaintiffs' choice of forum received greater deference than the defendants' choice of forum); *cf. Milanes*, 2009 WL 3367497, at *3 (concluding that the plaintiff's choice of forum did not outweigh the defendant's choice of forum because the District of Columbia was not the plaintiff's home forum and the relevant events did not occur in the District of Columbia).

In sum, the court concludes that although there is some local interest in deciding this case in the District of Arizona, this consideration is outweighed by the need to grant deference to the plaintiffs' choice of forum given that the plaintiffs' claims arose in the District of Columbia. The defendants have failed to meet their burden of establishing that considerations of convenience and the interests of justice would be served by a transfer to the District of Arizona. Accordingly, the court denies the defendants' motion to transfer venue.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to transfer venue to the District of Arizona.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of December, 2009.

                                              RICARDO M. URBINA
                                          United States District Judge