**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF HOME BUILDERS *et al.*, | : | |
| Plaintiffs, | : | Civil Action No.: 09-0548 (RMU) |
| v. | : | Re Document No.: 18 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*, | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

## GRANTING THE DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This matter comes before the court on the motion to dismiss filed by defendants the Environmental Protection Agency ("the EPA") and the Army Corps of Engineers ("the Corps").[1] The plaintiffs, trade associations representing businesses in the housing and construction fields, seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*., of the defendants' designation of two reaches of the Santa Cruz River in Arizona as "traditional navigable waters" ("TNWs") under the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*. The defendants move to dismiss for lack of subject matter jurisdiction. As discussed in detail *infra* Part III.B, because the court determines that the CWA precludes judicial review of the agency determinations at this time, the court grants the defendants' motion to dismiss.[2]

---

1 Also named as defendants and joining in the motion to dismiss are the Administrator of the EPA, the Acting Assistant Administrator for Water of the EPA, the Secretary of the Army, the Commanding General and Chief of Engineers of the Corps and the Commander of the Corps' Los Angeles District.

2 The defendants also move to dismiss on three additional grounds: (1) the agency actions were not "final" under the APA; (2) the plaintiffs lack standing; and (3) the plaintiffs' claims are not ripe for judicial review. *See generally* Defs.' Mot. Because the court determines that the CWA precludes judicial review at this time, it need not reach these arguments.

## II. BACKGROUND

### A. Statutory Framework

The CWA was promulgated "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The EPA and the Corps share regulatory authority to administer and enforce the CWA. *See, e.g.*, 33 U.S.C. § 1251(d) (providing that, unless otherwise indicated, the EPA's Administrator "shall administer this chapter"); *id.* § 1344(d), (a) (authorizing the Secretary of the Army, "acting through the Chief of Engineers," to make permitting decisions for the discharge of dredged or fill material into "the navigable waters"). If a property owner is unsure if his or her land contains waters regulated under the CWA, he or she can request a jurisdictional determination ("JD") from the Corps. U.S. Army Corps of Eng'rs, Regulatory Guidance Letter No. 08-02 at 1 (June 26, 2008). An "approved" JD is the Corps' declaration that waters either do or do not fall within federal jurisdiction under the CWA; approved JDs are subject to administrative review. 33 C.F.R. § 331.2. Regulatory jurisdiction under the CWA derives from Congress's commerce power, *see Rapanos v. United States*, 547 U.S. 715, 724 (2006) (plurality opinion), and waters can fall under that jurisdiction by virtue of their connection to TNWs, *see id.* at 742.

Property owners must apply for a permit to fill any waters over which the Corps and EPA have jurisdiction under the CWA. *See* 33 U.S.C. § 1344(a). Unsatisfied permit applicants can challenge permitting decisions in administrative proceedings, *see* 33 C.F.R. § 331.2, as well as in federal district court, *see id.* § 331.12; *Rapanos*, 547 U.S. at 730. If a property owner deposits dredged or fill material into federally regulated waters without a permit, both the EPA and the Corps have a number of tools to address the violation. The EPA can issue a compliance order, *see* 33 U.S.C. § 1319(a)(3), or the Corps can issue a cease-and-desist order, *see* 33 C.F.R. §

326.3(c)(1). Alternatively, either the EPA or the Corps can assess administrative penalties. *See* 33 U.S.C. § 1319(g); 33 C.F.R. § 326.6. The assessment of administrative penalties is subject to judicial review. 33 U.S.C. § 1319(g)(8); 33 C.F.R. § 326.6(l). Finally, both the EPA and the Corps possess authority to initiate enforcement actions in federal district court seeking injunctive relief and monetary penalties. *See* 33 U.S.C. § 1319(b); 33 C.F.R. § 326.5.

**B. Factual & Procedural History**

On December 3, 2008, the EPA's Assistant Administrator for Water issued a letter to the Assistant Secretary of the Army for Civil Works, stating that two reaches of the Santa Cruz River were TNWs. Compl. ¶ 3 & Ex. 1 ("EPA TNW Determination") at 1. In this letter, the EPA affirmed earlier determinations made by the Corps' Los Angeles District that the two reaches qualified as TNWs.[3] Compl. ¶ 4; EPA TNW Determination at 1.

The plaintiffs commenced this action on March 23, 2009, *see generally* Compl., alleging that the EPA and the Corps violated the APA's procedural requirements in determining that the reaches were TNWs, *id.* ¶¶ 58-66. More specifically, the plaintiffs claim that the TNW determinations were either administrative rules, in which case the agencies failed to abide by the APA's rulemaking procedures, or adjudications, in which case the agencies failed to follow the adjudicatory procedures outlined in the APA. *Id.* The plaintiffs also contend that the TNW

[3] Because waters that are sufficiently connected to TNWs can fall under federal regulatory jurisdiction, *see Rapanos*, 547 U.S. at 742, property owners within the vicinity of the Santa Cruz River may find waters on their lands subject to CWA permitting requirements should they want to deposit dredged or fill material to develop their properties, *see* 33 U.S.C. § 1344(a). The permitting process can be arduous and expensive, *Rapanos*, 547 U.S. at 721, and may result in the Corps' refusal to issue a permit, frustrating property owners' plans to develop their land, *see id.* at 730.

determinations were arbitrary and capricious, were unsupported by sufficient evidence and exceeded the agencies' statutory authority. *Id.* ¶¶ 67-79.

The defendants previously filed a motion to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a), *see generally* Defs.' Mot. to Transfer, which this court denied, *see generally* Mem. Op. (Dec. 30, 2009). The defendants then filed this motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See generally* Defs.' Mot. As the motion is now ripe for adjudication, the court turns to the applicable legal standard and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the

burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

**B. The Court Grants the Defendants' Motion to Dismiss**

The defendants assert that judicial review of the challenged TNW determinations is premature. Defs.' Mot. at 14-18. More specifically, they contend that Congress intended to preclude review of agency actions until the EPA or the Corps attempts to enforce the CWA by either assessing administrative penalties or initiating an action in district court. *Id.* The defendants point to cases in which courts have interpreted the CWA to preclude "pre-enforcement review" of various agency actions, including JDs and the issuance of compliance and cease-and-desist orders. *Id.* at 15-17. Based on these authorities, the defendants argue that

when plaintiffs seek pre-enforcement review of TNW determinations, as they do in this case, review is therefore precluded by the CWA. *Id.* at 17-18.

The plaintiffs concede that courts have consistently interpreted the CWA to preclude pre-enforcement judicial review of compliance and cease-and-desist orders, but seek to distinguish those agency actions from the TNW determinations they now challenge. Pls.' Opp'n at 30. They argue that Congress intended to give the agencies flexibility in choosing between reviewable and non-reviewable enforcement options, but that precluding review of TNW determinations, which are not enforcement measures, would not further this purpose. *Id.* at 31-32. Finally, the plaintiffs contend that the defendants' argument would have the effect of "preclud[ing] judicial review of any agency decision that impacts or relates to their jurisdictional authority," and encourage the court to reject so sweeping a rule. *Id.* at 31.

The APA grants a cause of action to persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. But judicial review under the APA is unavailable when it is precluded by statute. *Id.* § 701(a)(1). In determining whether Congress intended to preclude a particular type of challenge to an agency action, a court examines a statute's express language, as well as "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).

Courts have routinely held that the CWA precludes "pre-enforcement review" of agency actions taken under its authority. *See, e.g.*, *Laguna Gatuna, Inc. v. Browner*, 58 F.3d 564, 566 (10th Cir. 1995); *S. Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*, 20

F.3d 1418, 1427 (6th Cir. 1994); *Rueth v. Envtl. Prot. Agency*, 13 F.3d 227, 230 (7th Cir. 1993); *S. Pines Assocs. v. United States*, 912 F.2d 713, 716-17 (4th Cir. 1990); *Hoffman Group, Inc. v. Envtl. Prot. Agency*, 902 F.2d 567, 568-69 (7th Cir. 1990).[4] In *Southern Pines* and *Hoffman Group*, the courts took note of the similarity between the CWA and other environmental statutes such as the Clean Air Act and the Comprehensive Environmental Response, Compensation, and Liability Act, both of which have been interpreted to preclude pre-enforcement review of EPA remedial actions. *S. Pines*, 912 F.2d at 716; *Hoffman Group*, 902 F.2d at 569. The shared structure of these statutes demonstrates Congress's intent to protect the EPA from unnecessary entanglement in litigation. *See S. Pines*, 912 F.2d at 716 (stating that "[t]he structure of these environmental statutes indicates that Congress intended to allow EPA to act to address environmental problems quickly and without becoming immediately entangled in litigation"). Furthermore, because the CWA clearly provides for judicial review of agency actions when either the EPA or the Corps assesses administrative penalties or initiates an enforcement action in district court, judicial review prior to enforcement is "impliedly precluded." *See S. Ohio Coal Co.*, 20 F.3d at 1426-27 (quoting *Hoffman Group*, 902 F.2d at 569).

In each of the Circuit cases cited above, however, either a compliance or a cease-and-desist order had already been issued or was impending. *Laguna Gatuna*, 58 F.3d at 565; *S. Ohio Coal Co.*, 20 F.3d at 1421; *Rueth*, 13 F.3d at 228; *S. Pines*, 912 F.2d at 714; *Hoffman Group*, 902 F.2d at 568. Thus, the plaintiffs attempt to distinguish this body of case law from the present

[4] *See also, e.g.*, *Sharp Land Co. v. United States*, 956 F. Supp. 691, 693-94 (M.D. La. 1996); *Howell v. U.S. Army Corps of Eng'rs*, 794 F. Supp. 1072, 1074 (D.N.M. 1992); *Leslie Salt Co. v. United States*, 789 F. Supp. 1030, 1033-34 (N.D. Cal. 1991); *Fiscella & Fiscella v. United States*, 717 F. Supp. 1143, 1146-47 (E.D. Va. 1989).

challenge by pointing out that "the TNW determination . . . is not a compliance order." Pls.' Opp'n at 30. In this respect, the plaintiffs' argument resembles that advanced in *McGown v. United States*, in which the plaintiff challenged a Corps cease-and-desist order by attempting to distinguish his suit from challenges to EPA compliance orders. 747 F. Supp. 539, 541-42 (E.D. Mo. 1990). But the district court rejected the plaintiff's argument, stating that "this distinction [was] immaterial because the rulings in *Southern Pines* and *Hoffman Group* were not predicated on the issuance of compliance orders. Those cases, in particular *Southern Pines,* stand for the proposition that *pre-enforcement* judicial review is not available under the CWA." *Id.* at 542.

These cases make clear that the dispositive factor is the timing of the court's review, rather than the specific pre-enforcement action of which the court's review is sought. Courts have confirmed this point by holding that JDs are also precluded from pre-enforcement review. *See Child v. United States*, 851 F. Supp. 1527, 1533 (D. Utah 1994); *Lotz Realty Co. v. United States*, 757 F. Supp. 692, 694-95 (E.D. Va. 1990). The reasoning supporting these holdings was cogently stated in *Rueth*, in which the Seventh Circuit affirmed the district court's determination that "if agency compliance orders are not reviewable until the enforcement stage, an agency's initial determination that it has the authority to either require permitting or issue orders in the absence of a permit application must also be unreviewable." *Rueth*, 13 F.3d at 229 (quoting *Rueth Dev. Co. v. Envtl. Prot. Agency*, 1992 WL 560944, at *2 (N.D. Ind. Nov. 24, 1992)); *cited in Child*, 851 F. Supp. at 1533 n.10 (precluding pre-enforcement review of the Corps' JD); *see also Lotz*, 757 F. Supp. at 695 (precluding pre-enforcement review of the Corps' JD, and reasoning that "[b]ecause *Southern Pines* tells us that judicial review of a compliance order is

pre-enforcement review precluded by the [CWA], then it necessarily follows that judicial review at a stage even more preliminary is also precluded").

TNW determinations are more preliminary than compliance orders, cease-and-desist orders, or even the JDs on which the issuance of those orders is based. *See* EPA TNW Determination at 2 (stating that the TNW determinations will be "used by the Corps to complete pending and future jurisdictional determinations"). Therefore, the court holds that the CWA precludes judicial review of a TNW determination until the EPA or the Corps decides to bring an enforcement action against a particular party, or the Corps issues an adverse permitting decision, at which time the aggrieved party will be able to challenge the basis for asserting federal jurisdiction over waters on its property, including the TNW determination underlying the assertion of that jurisdiction. *See S. Pines*, 912 F.2d at 717 (noting that "[the plaintiffs] can contest the existence of EPA's jurisdiction if and when EPA seeks to enforce the penalties provided by the Act").

In arriving at this conclusion, the court rejects two additional arguments advanced by the plaintiffs. The plaintiffs first assert that the rationale underlying the holdings in the precedent cases on which the court here relies is to give the EPA and the Corps flexibility in choosing between reviewable and unreviewable enforcement options. *See* Pls.' Opp'n at 31-32. They argue that precluding pre-enforcement review of the TNW determinations would not effectuate the intent of Congress to provide flexibility in enforcement, because the TNW determinations are not enforcement measures. *See id.* But the CWA's statutory scheme seeks to avoid unnecessarily entangling the agencies in pre-enforcement litigation, and allowing the plaintiffs to

contest the TNW determinations at this time would impede the agencies' ability to administer the CWA. *See S. Pines*, 912 F.2d at 717 (stating that "[a]llowing the parties to challenge the existence of EPA's jurisdiction would delay the agency's response in the same manner as litigation contesting the extent of EPA's jurisdiction").

Finally, the plaintiffs argue that precluding judicial review of the agencies' TNW determinations at this pre-enforcement stage would have the effect of "foreclos[ing]" the issue of where TNWs exist, and would "insulate" agency decisions about the jurisdictional reach of the CWA. Pls.' Opp'n at 27, 31. But several Supreme Court decisions discuss "traditional navigable waters" and those waters' relationship to the reach of regulatory jurisdiction under the CWA, decisions that would not exist were there not avenues for judicial review of these issues. *See, e.g.*, *Rapanos*, 547 U.S. at 729-42 (defining, in a consolidated appeal of an EPA enforcement action and an adverse permitting decision, the scope of CWA jurisdiction with reference to TNWs). The very reason that the CWA precludes pre-enforcement review of TNW determinations is that it clearly provides for judicial review of them in enforcement proceedings, s*ee S. Ohio Coal Co.*, 20 F.3d at 1426-27, and in actions challenging adverse permitting decisions, *see Rapanos*, 547 U.S. at 730. Until then, the agencies must be able to administer the CWA without becoming entangled in premature litigation.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss for lack of subject matter jurisdiction. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 18th day of August, 2010.

RICARDO M. URBINA
United States District Judge